**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES EVERETT SHELTON, on behalf of himself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NANDYPROTECTINGFAMILIES LLC AND ETHOS TECHNOLOGIES INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |

_____/

## CLASS ACTION COMPLAINT

Plaintiff James Everett Shelton (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff alleges that NandyProtectingFamilies LLC ("Nandy"), an agent of Ethos Technologies Inc. ("Ethos") made unsolicited telemarketing calls on Ethos behalf to his residential telephone number that is listed on the National Do Not Call Registry.

4.      Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6.      Plaintiff James Everett Shelton is an individual citizen and resident of this District.

7.      Defendant Ethos Technologies Inc. is a Texas corporation that does business in this District.

8.      Defendant NandyProtectingFamilies LLC is a Delaware limited liability company that makes telemarketing calls into this District.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10.      This Court has personal specific jurisdiction over both Defendants because they telemarketing calls into this District, just as they did with the Plaintiff. Indeed, Nandy's principal, Ms. Nandy Ghonda, is licensed in Pennsylvania as an insurance producer. Furthermore, Ethos Technologies is registered to do business in this District.

11.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Plaintiff is a resident of this District.

## TCPA BACKGROUND

12.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

13.      § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

17.      Defendants are a "person" as the term is defined by 47 U.S.C. § 153(39).

18.      Ethos Technologies is an insurance company.

19.      To generate customers, Ethos Technologies relies on third party agents, such as Nandy to generate new customers.

20.      To generate new customers, Nandy makes telemarketing calls.

21.      At no point has the Plaintiff sought out or solicited information regarding Defendants' goods and services prior to receiving the telemarketing calls at issue.

Calls to Mr. Shelton

22.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23.    Plaintiff's telephone number (the "Number"), 484-626-XXXX, is on the National Do Not Call Registry and has been registered continuously for more than one year prior to the calls at issue.

24.    The Number is a residential telephone number of Mr. Shelton.

25.    It is registered in his name and used for personal calls only.

26.    It is not associated with a business.

27.    Despite this, Nandy sent multiple telemarketing calls to be placed to Mr. Shelton.

28.    These calls were placed on March 4 (twice) and March 6 (four times), 2023.

29.    The Plaintiff did not answer five of these six calls as the Caller ID, (484) 257-7453 indicated that a "Scam Likely".

30.    During the second call on March 4 at 11:08 AM, Mr. Shelton answered the phone but there was no one else on the other end and disconnected after approximately ten (10) seconds.

31.    Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified that the caller ID 484-257-7453 as robocallers. *See* https://www.nomorobo.com/lookup/484-257-7453.

32.    However, the contact of Mr. Shelton persisted.

33.    Immediately after Plaintiff received a missed phone call from 484-257-7453 on March 6, 2023 at 9:35 AM, the Plaintiff was sent an automated text at 9:35 AM:

> Hi please call back (732) 835-2077 for your info request received by nandy ghonda, licensed agent. PS:  Please click on this link for a free insurance quote tps://agents.ethoslife.com/invite/f1fcflif you are no longer interested, text no

34.     However, Mr. Shelton had not requested contact from Ethos Life.

35.     Mr. Shelton then received three more calls from (484) 257-7453 on March 6, 2023.

36.     Mr. Shelton received another automated text on March 7, 2023.

37.     Mr. Shelton then contacted Nandy via e-mail on March 7, 2023 and requested that he be placed on her Do Not Call List and receive a copy of her Do Not Call policy.

38.     Nandy did not send a copy of the Do Not Call policy.

39.     Instead, two more telemarketing calls were sent on March 9 from (484) 257-7453.

40.     All of the telemarketing calls from that number were sent to promote Ethos life insurance policies.

41.     On these calls, Nandy would try to sell the call recipient a policy from Ethos.

42.     During the last two (2) calls on March 9th, Mr. Shelton answered the phone but he was not interested in life insurance and disconnected the calls.

43.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

44.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, and they were annoyed and harassed.

45.     In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

**Ethos Vicarious Liability**

46. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

47. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

48. The FCC has instructed that sellers such as Ethos may not avoid liability by outsourcing telemarketing to third parties, such as Nandy:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

49. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

50.     Ethos is liable for telemarketing calls placed by Nandy to generate customers for Ethos.

51.     Ethos authorized Nandy to send telemarketing calls.

52.     Ethos controls the day-to-day activities of Nandy's telemarketing for Ethos.

53.     Ethos restricts the geographic footprint into which its telemarketing vendors, including Nandy, can cause calls to be made.

54.     Ethos provided the specific criteria for the leads it would accept and required its vendors, including Nandy, to adhere to those criteria.

55.     Ethos knew or reasonably should have known that Nandy was violating the TCPA on Ethos's behalf but Ethos failed to take effective steps within its power to cause them to stop.

56.     Ethos has previously been implicated in TCPA lawsuits, including by violating the TCPA's prohibition on making calls to a National Do Not Call Registry number without the recipient's prior express consent.

57.     A reasonable seller whose telemarketers are the targets of telemarketing complaints would and should investigate to ensure that its telemarketing complies with the TCPA.

58.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

**Class Action Allegations**

59.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure,

Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated

throughout the United States.

60.     The class of persons Plaintiff proposes to represent is tentatively defined as:

**National Do Not Call Registry Class**: All persons in the United States whose (1)
telephone numbers were on the National Do Not Call Registry for at least 31 days,
(2) but who received more than one telemarketing calls from or on behalf of either
Defendant (3) within a 12-month period, (4) from four years prior the filing of the
Complaint.

This is referred to as the "Class".

61.     Excluded from the Class are counsel, the Defendants, and any entities in which

the Defendant have a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

62.     The Class as defined above are identifiable through phone records and phone

number databases.

63.     The potential members of the Class number at least in the thousands.

64.     Individual joinder of these persons is impracticable.

65.     The Plaintiff is a member of the Class.

66.     There are questions of law and fact common to Plaintiff and to the proposed Class,

including but not limited to the following:

(a) Whether Ethos is vicariously liable for the conduct of Nandy;

(b) whether Defendants systematically made multiple telephone calls to members
of the National Do Not Call Registry Class;

(c) whether Defendants made calls to Plaintiff and members of the Class without
first obtaining prior express written consent to make the calls;

    (d)  whether Defendants' conduct constitutes a violation of the TCPA;

    (e)  whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

67.    Plaintiff's claims are typical of the claims of members of the Class.

68.    Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

69.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

70.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

71.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

72.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency

purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

73.     The Defendants' violations were negligent, willful, or knowing.

74.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

75.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as a representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendant and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting

on Defendants' behalf from making calls, except for emergency purposes, to any residential

number listed on the National Do Not Call Registry in the future.

F.      An award to Plaintiff and the Class of damages, as allowed by law; and

G.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

JAMES EVERETT SHELTON,
By his attorney

Dated: May 3, 2023

/s/ Jeremy C. Jackson
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich (subject to *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com